IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOHNNY GODFREY,                    :

     Plaintiff,                   :

vs.                                :     CIVIL ACTION 05-0559-CG-M

DOCTOR BARNES,                     :

     Defendant.                   :

<u>REPORT AND RECOMMENDATION</u>

     Plaintiff, an Alabama prison inmate proceeding <u>pro</u> <u>se</u> and <u>in</u> <u>forma</u> <u>pauperis</u> filed a Complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on the Motion for Summary Judgment of Defendant, Dr. Robert Barnes (Docs. 13, 14, and 20); Plaintiff's Response in Opposition thereto (Doc. 15); Plaintiff's Motion to Amend and Include all Updated Medical Records (Doc. 21); Defendant Barnes' Supplemental Special Report (Doc. 27); and Plaintiff's Response to Defendant's Supplemental Special Report (Doc. 28).  For the reasons stated below, it is recommended that the Motion for Summary Judgment of Defendant Dr. Robert Barnes be granted and that Plaintiff's action against the Defendant be dismissed with prejudice.

<u>I.  SUMMARY OF FACTUAL ALLEGATIONS</u>

1

From its review of the record, the Court summarizes the parties' allegations that are material to the issues addressed in this Report and Recommendation.  Plaintiff, an Alabama inmate, is incarcerated at Fountain Correctional Facility ("Fountain"), and complains that since March of 2005, while incarcerated at Fountain, he has been denied medical treatment for a lower back problem, as well as proper medical treatment for the disease Hepatitis C.  (Doc. 1 at 4-10).

According to Plaintiff, on January 4, 2004, he injured his back while working in the free world.  Although Plaintiff was not incarcerated at the time of this injury, he became incarcerated as a result of a parole violation while he was being treated for the injury.  (Id. at 5-6, 9-10).  Plaintiff claims that a free world doctor declared him disabled, and recommended that he undergo back surgery.  However, in February of 2005, Plaintiff was arrested, convicted, and sentenced to prison for a parole violation.  (Id. at 5).  Initially, Plaintiff was housed in Kilby Correctional Facility, but in March of 2005, Plaintiff was transferred to Fountain.  (Id.).

Plaintiff claims that upon his arrival at Fountain he signed up for sick call, informing the medical staff of his injury and that he was experiencing intense pain.  (Id.).  Plaintiff also informed the medical staff that he had been previously diagnosed by a free world specialist who had recommended that Plaintiff

2

undergo surgery for his back condition.[1]  (Id.).  Plaintiff was then examined by Dr. Barnes, the medical doctor at Fountain, and Plaintiff alleges that Dr. Barnes agreed with the surgery recommendation, but would not authorize it based upon his opinion that Prison Health Services should not be the party responsible, but rather the workmen's compensation from his prior job.  (Id. at 9).  Plaintiff complains that as a result of this decision, he was denied and delayed prompt and adequate medical attention, and that he has suffered "misery and agony."  (Id.).

In his Complaint, Plaintiff also contends that during June 2005, he was informed that he had contracted Hepatitis C, but that he would not be treated for this disease because cost of medication and treatment would be too high.  (Id. at 9). Plaintiff claims that he was advised that the medical staff would only monitor the health of his liver, rather than treating his disease.  (Id.).

In subsequent pleadings, Plaintiff has claimed that he was denied proper medical treatment for his back condition because he has not been given an egg crate mattress, and because, the epidural injections which he received in late 2006 and early 2007, were delayed.  (Docs. 15 and 21).  As a result of the

---

[1]Plaintiff has filed with the Court a handwritten note which appears to be from a doctor at Flowers Hospital.  The note documents that Plaintiff had suffered a back injury while working, and that Plaintiff was "considering surgery."  (Doc. 1 at 11).

alleged delay in treatment and lack of egg crate mattress, Plaintiff claims that he has suffered constant back pain. Plaintiff also continues with his complaint of improper care of his condition of Hepatitis C.

Defendant Dr. Barnes filed his Answer and Special Report, acknowledging Plaintiff's claims, but asserting that he, and Fountain's medical and nursing staff, have always provided Plaintiff with appropriate medical care. (Doc. 13 at 2). Dr. Barnes explains that upon Plaintiff's arrival at Fountain, in March 2005, Defendant Barnes reviewed Plaintiff's medical records. (Doc. 13, Ex. B at 2). He states that Plaintiff had received an MRI from Dale Medical Center on February 18, 2004, which showed that he had narrowing L4/L5 intervertebral space with desiccation of the L4/L5 disc. (Id.). Plaintiff was also noted to have broad based herniation at L4/L5 with impingement of the right neuroforamen. (Id.).

On February 25, 2005, just a month prior to Plaintiff's transfer to Fountain, he was afforded a lumbar spine x-ray series which revealed that Plaintiff's vertebrae were well aligned. (Id.). Mild degenerative disc disease at L4/5 was shown with possible degenerative disease at L3/4. (Id.). Aside from the degenerative findings, according to Defendant, there were no significant findings. A follow up lumbar series was ordered on April 6, 2005, which was interpreted by Radiologist Thomas J.

4

Payne, III, M.D., which revealed that Plaintiff's condition was improved with his vertebrae shown to be well aligned and with no evidence of fracture or destructive bone disease.  (Id., Ex. B at 3).  A repeat study was ordered on May 19, 2005, which was also interpreted by Dr. Payne and showed similar findings with hypertrophic spurring noted only as a chronic condition.  (Id.).

Subsequently, on September 23, 2005, Plaintiff was referred for specialty evaluation to Mobile Neurosurgeon Robert L. White, who provided Plaintiff with a physical evaluation and diagnosed Plaintiff with possible right L4/5 disc syndrome.  Dr. White requested a follow up MRI before making treatment recommendations.  (Id.).  Plaintiff was afforded the MRI on January 20, 2006, and the study showed posterior central disc extrusion at L3/4 and right protrusion at L4/5.  According to Dr. Barnes, at the time of the initial Special Report, Plaintiff was awaiting referral back to Dr. White for re-evaluation and treatment recommendation pursuant to the January MRI findings. (Id.).

In a supplemental report, Defendant has reported that the MRI performed on January 20, 2006, showed posterior central disc extrusion at L3-4 and right protrusion at L4-5.  (Doc. 27, Ex. B at 2).  Plaintiff was next scheduled to see Dr. White for an office visit on April 6, 2006, but the appointment had to be rescheduled because of Plaintiff having a conflicting court

hearing.  (Doc. 27, Ex. A-3, Ex. B at 2).  Dr. White subsequently
examined Plaintiff on April 25, 2006, and recommended that
Plaintiff be treated conservatively with a series of epidural
injections at L4-5.  (Id., Ex. A-5, Ex. B at 2).

On August 22, 2006, Plaintiff was transferred to Springhill
Memorial Hospital in Mobile, Alabama, for evaluation by Dr.
Patricia Boltz.  (Id., Ex. A-6, Ex. B at 2).  Dr. Boltz examined
Plaintiff and performed a lumbar epidural steroid injection
("LESI") under fluoroscopy at L5-S1.  (Id., Ex. A-7).  The
fluoroscopic images taken during the procedure showed good spread
of the medication bilaterally at L3-4 through L5-S1.  (Id., Ex. B
at 2).  It was noted that Plaintiff tolerated the procedure well
with no complications.  (Id.).  Again, on October 3, 2006,
Plaintiff was transferred to Springhill Memorial Hospital for a
second LESI by Dr. Boltz.  (Id., Ex. A-8, Ex. B at 3).  At this
time, Plaintiff reported to Dr. Boltz an 80% reduction in pain
following the first LESI.  In fact, according to Dr. Boltz's
record, Plaintiff's relief from pain had continued until two
weeks prior to this second injection.  (Id.).  Again, the
injection was conducted under fluoroscopy at L5-S1, and again the
procedure went well.  (Id.).

On February 15, 2007, Plaintiff was once again transferred
to Springhill Memorial Hospital for a third and final LESI by Dr.
Boltz.  (Id., Ex. A-9).  On this date, Dr. Boltz noted that

Plaintiff reported "fantastic relief" from his second injection,
noting further that the injection "helped tremendously with his
back pain." (Id.). Once again the procedure went well, with no
complications. Dr. Boltz made a note in her record that
Plaintiff "may gain some relief from an egg crate mattress."
(Id.).

After receiving his epidural series, Plaintiff was again
referred to Dr. White for neurological evaluation. (Id., Ex. A-
10). Dr. White requested another MRI for referral to a
neurosurgeon in his group for surgical evaluation. (Id., Ex.
A-11). At the time of the filing of the supplement to the
special report, Dr. Barnes was awaiting the results of
Plaintiff's MRI and surgical evaluation. (Id.).

In addition to the many examinations, tests, and epidural
blocks which Plaintiff was afforded at free world facilities with
free world doctors, during Plaintiff's incarceration at Fountain,
he has been given the benefit of numerous medications including
in part the following: Feldene, Analgesic Balm, Flexeril, Motrin,
Percogesic, Prednisone, Indocin, Bactrim, Isoniazid, and
Rifampin. (Doc. 13, Attachment 1 at 3-10, 33-55). Additionally,
Plaintiff has been afforded a number of specialty profiles,
including a "no standing profile," "front of line profile," "no
lifting over five pounds profile," "no duty profile," "bottom
bunk profile," and "cane walking only profile." Plaintiff has

been provided a back brace, as well as a walking cane.  (Doc. 13, Ex. B at 3).

Regarding Plaintiff's Hepatitis C condition, Defendant Barnes maintains that Plaintiff has been afforded routine liver enzyme panels in order to monitor the effect of the disease on Plaintiff's liver.  (Doc. 13 at 4).  Plaintiff was diagnosed with Hepatitis C on May 26, 2005, subsequent to discovery that he had moderately elevated AST and ALT liver enzymes.  (Doc. 27, Ex. B at 4).  Following his diagnosis, Plaintiff has received routine blood and urine analyses in order to determine the effect Hepatitis C may be having on his liver function.  (Id.).  Dr. Barnes notes that Plaintiff's blood and urine was examined on March 1, 2006, and at that time, Plaintiff's AST and ALT enzymes were normal.  (Id., Ex. A-16).  Approximately six months later, on November 2, 2006, Plaintiff received another blood and urine analysis, which again showed that his AST and ALT liver enzymes were normal.  (Id., Ex. A-17).  At the time of the filing of the supplement to the Special Report in May of 2007, Dr. Barnes stated that Plaintiff would receive "another blood and urine analysis in the near future."  (Id., Ex. B at 4).  In addition, Plaintiff has received two of his three scheduled Hepatitis A and Hepatitis B vaccinations.  (Id., Ex. A-18, Ex. B at 4).

## II.  PROCEDURAL ASPECTS OF THE CASE

On October 3, 2005, Plaintiff filed his Complaint under 42 U.S.C. § 1983, alleging that Dr. Robert Barnes violated his Eighth Amendment rights by refusing to provide him medical treatment for his lower back problem and his Hepatitis C condition.  (Doc. 1; doc. 15; and doc. 21).  Plaintiff seeks compensatory and punitive damages for Defendant's deliberate indifference to his serious medical needs.  (Doc. 1 at 10).  Plaintiff also asks this Court to declare that the conduct which he has alleged gives rise to a Section 1983 cause of action based upon the Eighth and Fourteenth Amendment claims of being deliberately indifferent to serious medical needs.  (Id.).

On June 9, 2006, Defendant Barnes filed his Special Report and Answer, denying any violation of Plaintiff's constitutional rights and asserting, in part, the defenses of qualified, absolute, substantive, state agent and discretionary function immunity.[2]  (Docs. 13 and 14).  Defendant also asserts that

_____

[2]Although Defendant has asserted numerous types of immunity, as a private entity, Dr. Robert Barnes is not entitled to immunity, whether qualified or absolute.  See Swann v. Southern Health Partners, Inc., 388 F.3d 834, 837 (11th Cir. 2004) ("The parties agree that as a private entity, SHP [a private corporation employed by the county to provide medical care to inmates at the county jail] is not entitled to assert a qualified immunity defense.");  Hinson v. Edmond, 205 F.3d 1264, 1265 (11th Cir. 2000) (a "privately employed prison physician [ ] is ineligible to advance the defense of qualified immunity");  Edwards v. Alabama Dep't of Corrections, 81 F. Supp. 2d 1242, 1254 (M.D. Ala. 2000) (a "private entity" contracting with a state to provide medical services to state inmates "is not entitled to qualified immunity....").  With respect to absolute immunity, Defendant has cited no case, and the Court is aware of

Plaintiff was contributorily negligent, and that Plaintiff's
damages, if any, resulted from an independent, efficient, and/or
intervening cause.  (Doc. 13 at 3).  Defendant also asserts the
Alabama Medical Liability Act, as well as the Prison Litigation
Reform Act as affirmative defenses.  Defendant Barnes contends
that, at best, Plaintiff has asserted a state law claim of
negligence, which is not a constitutional claim, and further that
Defendant Barnes is not responsible for the policies and
procedures of the Alabama Department of Corrections.  (Id.).

On July 17, 2006, Plaintiff filed a Response in Opposition
to Defendant's Answer, reasserting his Eighth Amendment claims
against Defendant Barnes.  (Doc. 15).  The Court converted
Defendant's Answer and Special Report to a Motion for Summary
Judgment on March 19, 2007.  (Doc. 20).  Plaintiff then filed a
Motion to Amend and Include all Updated Medical Records, which
the Court allowed on April 17, 2007.  (Docs. 21 and 24).  The
Court also ordered Defendant Barnes to file a Supplemental
Special Report, addressing the claims in Plaintiff's Amended
Complaint.  (Doc. 24).  Defendant Barnes filed a Supplemental
Special Report on May 24, 2007, including a supplemental
affidavit, along with additional medical records relevant to

---

no case, extending absolute immunity to privately employed
physicians providing medical services to state inmates.  However,
immunity for Dr. Barnes is not an issue in this action, as the
Court has determined that Plaintiff has failed to show a
constitutional violation.

Plaintiff's claims.  (Doc. 27).  Plaintiff then filed a Response

to Defendant's Supplemental Special Report on June 8, 2007.

(Doc. 28).  All of said pleadings are now before the Court.[3]

### III. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment,

the Court begins with these basic principles.  The <u>Federal Rules

of Civil Procedure</u> grant this Court authority under Rule 56 to

render "judgment as a matter of law" to a party who moves for

summary judgment.  "[S]ummary judgment is proper 'if the

pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact. . . .'"

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (quoting <u>Fed.

R. Civ. P.</u> 56(c)).

The Court must view the evidence produced by "the nonmoving

party, and all factual inferences arising from it, in the light

most favorable to" that party.  <u>Barfield v. Brierton</u>, 883 F.2d

923, 934 (11th Cir. 1989).  However, Rule 56(e) states that:

> an adverse party [to a motion for summary
> judgment] may not rest upon the mere
> allegations or denials of the adverse party's
> pleading, but the adverse party's response,

---

[3]Plaintiff has also filed a Motion to Compel Defendant to
Follow Medical Specialist Order (Doc. 30), and a Motion to Compel
Defendant to Send Plaintiff to a Hepatitis Disease Specialist
(Doc. 31).  Since this Court has determined that Plaintiff has
failed to put forth evidence of a constitutional violation, these
motions are hereby dismissed as **MOOT**.

> by affidavits or as otherwise provided in
> this rule, must set forth specific facts
> showing that there is a genuine issue for
> trial.  If the adverse party does not so
> respond, summary judgment, if appropriate,
> shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at

325-27.  "[T]here is no issue for trial unless there is

sufficient evidence favoring the nonmoving party for a jury to

return a verdict for that party. . . .  If the evidence is merely

colorable, . . . or is not significantly probative, . . . summary

judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 249-50 (1986) (internal citations omitted).  "Summary

judgment may be granted against a party who fails to establish

the existence of an element essential to that party's case and on

which that party will bear the burden of proof at trial."

Liberty Mut. Fire Ins. Co. v. Sahawneh, 2001 WL 530424, *1 (S.D.

Ala. May 11, 2001) (citing Anderson, 477 U.S. at 249-50).

## IV. DISCUSSION

In this action, Plaintiff seeks redress for alleged

constitutional deprivations pursuant to 42 U.S.C. § 1983.

Specifically, Plaintiff alleges that Defendant Dr. Barnes'

deliberate indifference to his serious medical needs while

incarcerated at Fountain Correctional Facility, i.e., the denial

and delay of adequate medical treatment for his back problem and

his Hepatitis C condition, violated his rights under the Eighth

Amendment.  For the reasons set forth below, the Court finds that

12

Plaintiff's allegations fail to establish any constitutional
violation by Defendant.   Thus, it is recommended that Defendant's
Motion for Summary Judgment be granted.

<u>Denial of Adequate Medical Care</u>

As discussed above, in this action, Plaintiff alleges that
Defendant was "deliberately indifferent" to his serious medical
needs in violation of the Eighth Amendment by failing to provide
proper medical treatment for him during his incarceration at
Fountain Correctional Facility.   Specifically, Plaintiff alleges
that he has been denied necessary back surgery, that his epidural
injections for his back pain for delayed, that he was denied an
egg crate mattress, and that his Hepatitis C condition has not
been appropriately treated.   (Docs. 1, 15, 21 and 28).   Plaintiff
states that because of the denial of back surgery, and the lack
of a egg crate mattress and the delay of his epidural injections,
he has suffered constant back pain.   (<u>Id.</u>).   According to
Plaintiff, he has also suffered for lack of proper medical care
for his Hepatitis C.   (<u>Id.</u>).

The Eighth Amendment provides that, "[e]xcessive bail shall
not be required, nor excessive fines imposed, nor cruel and
unusual punishments inflicted."   U.S. Const. amend. VIII.   "The
Eighth Amendment's proscription of cruel and unusual punishments
prohibits prison officials from exhibiting deliberate
indifference to prisoners' serious medical needs."   <u>Campbell v.</u>

Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing Estelle v.
Gamble, 429 U.S. 97, 104 (1976)).  In Sims v. Mashburn, 25 F.3d
980 (11th Cir. 1994), the Eleventh Circuit delineated the
objective and subjective portions of an Eighth Amendment claim as
follows:

> An Eighth Amendment claim is said to have two
> components, an objective component, which
> inquires whether the alleged wrongdoing was
> objectively harmful enough to establish a
> constitutional violation, and a subjective
> component, which inquires whether the
> officials acted with a sufficiently culpable
> state of mind.

Sims, 25 F.3d at 983 (citing Hudson v. McMillian, 503 U.S. 1, 8
(1992)).

To meet the objective element required to demonstrate a
denial of medical care in violation of the Eighth Amendment, a
plaintiff first must demonstrate the existence of an "objectively
serious medical need." Farrow v. West, 320 F.3d 1235, 1243 (11th
Cir. 2003).  A serious medical need is "'one that has been
diagnosed by a physician as mandating treatment or one that is so
obvious that even a lay person would easily recognize the
necessity for a doctor's attention.'"  Id. (quoting Hill v.
Dekalb Req'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir.
1994)).  "In either of these situations, the medical need must be
one that, if left unattended, pos[es] a substantial risk of
serious harm."  Id.  (internal quotation marks and citation
omitted).

In order to meet the required subjective element of an Eighth Amendment denial of medical care claim, a plaintiff must demonstrate "deliberate indifference" to a serious medical need. Id.

> In Estelle, the Supreme Court established that "deliberate indifference" entails more than mere negligence.  Estelle, 429 U.S. at 106, 97 S. Ct. 285; Farmer, 511 U.S. at 835, 114 S. Ct. 1970.  The Supreme Court clarified the "deliberate indifference" standard in Farmer by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official *knows of* and *disregards an excessive risk to inmate health or safety*; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S. Ct. 1970 (emphasis added).  In interpreting Farmer and Estelle, this Court explained in McElligott that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott, 182 F.3d at 1255; Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

Farrow, 320 F.3d at 1245-46.

For purposes of this analysis, the Court assumes, without deciding, that Plaintiff has demonstrated an "objectively serious medical need" in order to satisfy the first component of his Eighth Amendment claim.  The Court turns its focus, instead, to

15

Plaintiff's claim that Dr. Barnes was deliberately indifferent to his serious medical need for treatment for his back pain and Hepatitis C.

Plaintiff maintains that he has suffered from lower back pain for which he needed but was denied surgery since an accident in 2004 before Plaintiff became incarcerated. (Doc. 1). Plaintiff's medical records do indeed reflect that he suffered back pain, but they also reflect extensive, ongoing treatment for his back problems. (Docs. 13 and 27). As noted in detail above, Plaintiff has been afforded numerous MRIs, lumbar spine x-ray series, specialist examinations, as well as three epidural blocks which gave Plaintiff significant relief from his back pain. (Id.). The Court notes that Plaintiff's complaint with regard to the epidural blocks is that they were delayed. Plaintiff's medical records also reflect numerous medications which have been administered to Plaintiff to improve his health or daily comfort. (Id.).

Regarding Plaintiff's complaint of delay in treatment, the records reveal that Dr. White recommended treating Plaintiff with epidural injections on April 25, 2006, and that Plaintiff's first actual injection occurred on August 22, 2006. (Doc. 27, A-6). While a few months may have lapsed between Dr. White's recommendation and the first epidural injection, this time period does not evidence deliberate indifference on the part of Dr.

16

Barnes.  On the contrary, Plaintiff's medical records, which he
has not contested, reflect extensive care by Dr. Barnes.  Any
delay in scheduling may have resulted because of the hospital or
the physician, as well as many other factors.  The evidence does
not reveal any deliberate indifference on the part of Dr. Barnes.
In fact, to the contrary, the facts reveal that Plaintiff
received, and is continuing to receive, extensive quality
treatment for his back pain.  (Docs. 13 and 27).

     Plaintiff also claims that Dr. Barnes has been deliberately
indifferent in denying him an egg crate mattress on which to
sleep.  Dr. Barnes has averred that it is against ADOC protocol
to distribute such mattresses.  (Doc. 27, Ex. B).  Further,
Plaintiff did not receive a prescription for such a mattress, but
rather, Dr. Boltz simply noted that Plaintiff might "gain relief
from an egg crate mattress."  (Id., Ex. A-9).  The fact that Dr.
Barnes has not issued to Plaintiff an item that might offer
Plaintiff "some relief," but that is against ADOC protocol,
certainly does not show deliberate indifference on the part of
Dr. Barnes.

     Finally, regarding Plaintiff's complaint that Dr. Barnes has
failed to treat him for Hepatitis C, again, Plaintiff's own
medical records discount this complaint.  Plaintiff has been
routinely tested to determine what effect, if any, that the
Hepatitis C may be having on him.  Plaintiff's most recent

17

testing occurred on March 1, 2006, and then again on November 2, 2006. (Doc. 27, Ex. A-17). Plaintiff's treatment for this disease, at this point, appears to be a monitoring of his liver function, which is a medical decision by Dr. Barnes in light Plaintiff's particular condition. Dr. Barnes has averred that "[a]ggressive treatment of [Plaintiff's] condition is contraindicated because [Plaintiff's] liver enzymes are not sufficiently elevated." (Doc. 13, Ex. B at 4). Despite the fact that Plaintiff may disagree with his treatment, there is no evidence of a constitutional violation.

Having considered the evidence in this case in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to establish any Eighth Amendment violation by Defendant Dr. Robert Barnes.

As discussed above, in order to satisfy the subjective element of an Eighth Amendment claim, Plaintiff must show that Defendant knew of and disregarded "an excessive risk to [his] health or safety." Farrow, 320 F.3d at 1245. Stated differently, Plaintiff must show that Defendant had "subjective knowledge of a risk of serious harm," that Defendant disregarded that risk, and that Defendant did so "by conduct that is more than mere negligence." Id. The record here, however, is devoid of evidence that Defendant had subjective knowledge of, and disregarded, a risk of serious harm to Plaintiff from his back

18

problems, or his Hepatitis C condition.  To the contrary, the record shows that Dr. Barnes was concerned about Plaintiff's back problems and that he was constantly monitoring and treating Plaintiff with pain medications, specialist evaluations, and diagnostic procedures from the date of his initial complaint of back pain in 2005 until the present.  There is no evidence that Defendant was deliberately indifferent to the pain that Plaintiff was suffering or even that Dr. Barnes has ever stopped trying to improve Plaintiff's condition.

The Eleventh Circuit has recognized that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989).  The fact that a Plaintiff may disagree with the efficacy of the treatment recommended or simply prefer a different course of treatment does not state a valid claim of medical mistreatment under the Eighth Amendment. See, e.g., Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) ("the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (quoting Estelle, 429 U.S. at 107); Del Muro v. Federal Bureau of Prisons, 2004 WL 1542216, *4 (N.D. Tex. 2004) ("[i]t is well-established that a difference in opinion or a

disagreement between an inmate and prison officials as to what medical care is appropriate for his particular condition does not state a claim for deliberate indifference to medical needs.").

Moreover, it is well established that "[s]imple medical malpractice . . . does not rise to the level of a constitutional violation." Waldrop, 871 F.2d at 1035.  Thus, even if the Court were to assume that Plaintiff had been incorrectly diagnosed and treated by Dr. Barnes, of which there is no evidence, Eighth Amendment liability cannot be grounded on "mere negligence." Farrow, 320 F.3d at 1245.  While the Court recognizes that Plaintiff experienced chronic back pain since his arrival at Fountain in 2005, there is no evidence that Dr. Barnes ever refused to treat him or that he engaged in "deliberately indifferent" delay in treating his pain or any of his other serious medical problems.  Cf., McElligott v. Foley, 182 F.3d 1248, 1257 (11th Cir. 1999) (reversing summary judgment for a prison physician and nurse who failed to provide pain medication, other than Tylenol, for an inmate suffering severe abdominal pain from stomach cancer).

Inasmuch as Plaintiff's own medical records establish that he received extensive medical treatment for his health problems, including his chronic back pain, as well as his Hepatitis C condition, Plaintiff has failed to meet the subjective element of "deliberate indifference" necessary to constitute an Eighth

20

Amendment violation.   Thus, Defendant is entitled to summary judgment on Plaintiff's Eighth Amendment claim of inadequate medical care.

<u>V.   CONCLUSION</u>

Based on the foregoing, it is recommended that the Motion for Summary Judgment of Defendant Dr. Robert Barnes (Docs. 13 and 27), be granted and that Plaintiff's action against the Defendant be dismissed with prejudice.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.   <u>Objection</u>.   Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.   <u>See</u> 28 U.S.C. § 636(b)(1)(C); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988); <u>Nettles v. Wainwright</u>, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).   The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the

21

original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   <u>Transcript (applicable where proceedings tape recorded)</u>. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 7th day of November, 2007.

<u>s/BERT W. MILLING, JR.</u>
UNITED STATES MAGISTRATE JUDGE